3 So.2d 552

## STATE v. LINHARDT.

No. 36204.

June 30, 1941.

Eugene Stanley, Atty. Gen., Niels F. Hertz, Asst. Atty. Gen., Bolivar E. Kemp, Jr., Dist. Atty., of Amite, and Joseph M. Blache, Jr., Asst. Dist. Atty., of Hammond, for the State, plaintiff and appellee.

Horace R. Reid and Leonard E. Yokum, both of Hammond, for defendant, appellant.

O'NIELL, Chief Justice.

The defendant was convicted of attempting to blackmail a certain woman, named in the bill of information, and was sentenced to imprisonment in the penitentiary for a term not less than two years or more than four years. He is appealing from the verdict and sentence.

The crime is defined by Act No. 110 of 1908, p. 166. The accusation, stated specifically in the bill of information, was that, on the 1st day of February, 1941, the defendant did wilfully, feloniously and maliciously threaten to accuse the woman named in the bill of information of misconduct, and to expose her as a woman of loose morals—she being a woman of good repute—and that the threats were made with the felonious intent to extort from her the sum of one hundred dollars.

The attorneys for the defendant reserved six bills of exception during the trial. The first bill has reference to the overruling of an objection to certain testimony given by the woman whom the defendant was accused of having threatened. The district attorney asked her: "What amount of money did he obtain from you?" The witness answered that she did not know how much it amounted to, but that she knew that he got $650 at one time. The defendant's attorney objected, and the judge immediately ordered the sheriff to withdraw the jury from the court room. The district attorney then repeated his question and the witness repeated her answer. The defendant's attorney again objected, and the district attorney stated that the purpose of the testimony was to show the relation which had existed between the witness and the defendant. The judge, without requiring the attorney for the defendant to explain his objection, declared that he overruled the objection. It was agreed then that the objection and ruling should apply to all of the testimony that the witness might give on the subject. The jury was returned to the court room, and the judge announced that he would allow the testimony to be introduced for the purpose only of showing the circumstances leading up to the charge in the bill of information. We infer from all of this that the judge and the district attorney understood that the objection to the testimony was that it tended to prove other crimes than the crime charged in the bill of information, and was very prejudicial to the defendant. The witness then related that, besides the $650, the defendant got a ring, a pistol and a typewriter from her without her consent and afterwards acknowledged that he had pawned the articles. And she said that he had not returned them.

Our opinion is that the judge should not have allowed that testimony to go to the

jury. It tended to prove offenses not charged in the bill of information, and was very prejudicial to the defendant. The only reason why we might not maintain this bill of exception is that the objection to the testimony is not stated in the bill; but it is stated in the bill that the note of evidence is made part of the bill, and we have no doubt that the judge and the district attorney were aware of the real objection to the testimony. In the interest of justice, therefore, we consider this bill of exception well founded.

The second bill of exception was reserved to the overruling of an objection to a question propounded by the district attorney to the woman whom the defendant was accused of attempting to blackmail. She was the principal witness and perhaps the only witness for the State. The district attorney asked her to explain what was meant by a certain part of a letter which the defendant had written to her. There is no merit in this bill of exception because it appears from the note of evidence that the witness did not attempt to explain the letter. The judge ruled that she might give the explanation if she knew what that part of the letter meant, but that she should not say what she thought it meant.

The third bill of exception was reserved to the introduction in evidence of only a part or fragment of a letter which was said to have been written by the defendant to the woman whom he was accused of having threatened. The other part of the letter was torn off and destroyed by the witness. It appears that the State introduced in evidence parts of seven letters which were said to have been written by the defendant to the woman whom he was accused of having threatened. The other parts of the letters were either blotted out or torn off and destroyed by the woman. As to the first one of these letters only a postscript was introduced in evidence. The last word in the postscript was "Love", and the signature was "Bill". There was no threat in the postscript, but merely a request for $100 to be sent to the writer by wire, in order that he might go somewhere. The place where he was to go was not stated in the postscript but was probably stated in the letter itself, which the witness destroyed. The writer of the postscript concluded by saying: "I am frantic and must go or *else*". The word "else" was underscored and possibly was intended as a threat. But from other fragments of letters it appears that the threat was not to harm the woman to whom the letters were written, but to commit suicide. That is explained in letters which she wrote to the defendant and which he introduced in evidence on the trial. It is very likely that the request for the $100, which the State construed as a demand coupled with a threat, might have been explained to the satisfaction of the jury if the jury had had the benefit of the letter itself. For that reason we consider the third bill of exception well founded.

[4] The fourth bill of exception has reference to the overruling of an objection to testimony given by the prosecuting witness, that she received threats from the defendant by telephone. It is argued by counsel for the defendant that verbal

threats are not admissible in a prosecution for violation of Act No. 110 of 1908. On the contrary, it was held in State v. Gallicio, 170 La. 954, 129 So. 541, that the crime might be committed by means of threats made by telephone. There is no merit in this bill of exception.

■ The fifth bill of exception has reference to the State's introducing in evidence two telegrams which the prosecuting witness testified she had received from the defendant. The objection made by counsel for the defendant was that there was no proof that the defendant sent the telegrams. One of the telegrams was dated January 25, 1941, and the other was dated February 2, 1941. They were addressed to the woman whom the defendant was accused of having threatened, and were delivered to her by the telegraph company. The first telegram was polite enough. It reads: "Letter on bus. Wire by Western Union my request by six. Must leave. Love. [signed] Bill." The other telegram savored of a threat—thus: "Your best bet is to call me charges prepaid within one hour. [signed] Bill." The prosecuting witness testified that the defendant was called "Bill" by his friends, and that that was the nom de plume over which he wrote to her. Whether the testimony with the circumstantial evidence was sufficient to prove that the defendant was the author of the telegrams was a question for the jury to decide. There is no merit in this bill of exception.

■ The sixth bill of exception has reference to a ruling sustaining an objection made by the district attorney to the introduction in evidence of a letter written by the prosecuting witness to the defendant. The purpose of the offering of such letters was to show that the prosecuting witness was very much in love with the defendant for a long time preceding the time when she complained to the district attorney and caused the defendant to be arrested and prosecuted on this charge of attempting to blackmail her. The defendant produced and offered in evidence five of such letters, which the prosecuting witness identified as letters which she had written to the defendant. When the fifth letter was identified and offered in evidence, the district attorney objected and the judge sustained the objection that there were enough of such letters in evidence to show what was the attitude of the prosecuting witness and the defendant towards each other before she complained to the district attorney and caused his arrest. It is said in the per curiam on this bill of exception that the letter which was excluded would have been only cumulative evidence at best; but we must bear in mind that it requires cumulative evidence to convince a jury in some instances. The question of sufficiency of the evidence on any issue pertaining to the question of guilt or innocence of the defendant in a criminal prosecution is a question for the jury to decide. Our conclusion therefore is that on a second trial the defendant should be allowed to introduce all of these letters which were written to him by the prosecuting witness, if their contents are relevant. It appears that there are some uncomplimentary and even hurtful reference to other persons in some of these

letters, as well as in some of the letters written by the defendant to the prosecuting witness. Those parts of the letters are irrelevant and ought to be excluded from the record by the judge—as we have no doubt they will be.

■ The only remaining bill of exception is the one which was reserved to the overruling of the defendant's motion for a new trial. The motion was merely a reiteration of the complaints made in the other bills of exception, and the further complaint that the verdict was contrary to the law and the evidence. This latter complaint, of course, presents nothing for an appellate court to consider in a criminal case.

The verdict and sentence are annulled and the case is ordered remanded to the district court for a new trial.

FOURNET, J., absent.

PONDER, J., concurs.